JANUARY TERM, 1883, Nos 66, 67, 74.                    MAY 21, 1883.

## Appeal of the Union Oil Company, Moerck and Falconer's Appeal, Appeal of Wm. R. Bole, *Guardian, et al.*

1. Upon a grant of ore lands "expressly reserving from this conveyance for the party of the first part, his heirs and assigns, the one eighth part of all the minerals or oil product produced on or from said land, to be divided between them on the land ;" it was *held*, that the language of the reservation designated a right in the grantor to the one eighth of the oil raised to the surface by the grantee, his heirs and assigns, at the pleasure and expense of the grantee and his heirs and assigns, and that, as then and not till then could the " product " be said to be produced, the grantor was entitled to his share without any deduction for expenses in producing it.

2. The measure of damages for the non-delivery to the grantor of his share of the oil so produced is the actual market value of the oil at the date of refusal to deliver with interest from that date.

3. The rule applicable to stocks on a failure to deliver should not be applied to a chattel like oil.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.; CLARK, J., absent.

Appeals of the Union Oil Company, of Moerck & Falconer, and of Wm. R. Bole, guardian of W. H. Bartle,

minor child of Wilmot Bartle, deceased, *et al.*, from a decree of the Common Pleas of *Warren county.*

Amicable action in equity between William R. Bole, guardian of W. H. Bartle, minor child of Wilmot Bartle, deceased ; Thomas Jefferson Limber, administrator of Wilmot Bartle, deceased ; James W. Smith, trustee ; Jane Hannah, Kate McNamara, and David McNamara, her husband, in right of said Kate ; Priscilla A. Coleman, Elizabeth Hastings, and E. O. Hastings, her husband, in right of said Elizabeth, complainants, and the Union Oil Company, Frederick Moerck, and W. T. Falconer, defendants.

The cause was submitted by agreement filed to be heard and determined by W. D. BROWN, P. J., in chambers, subject to the right of appeal from his decision.

The substantial facts, as found by the case stated and by the master, were as follows : The complainants were heirs, representatives, and *cestuis que* trust of Wilmot Bartle, in whom, in 1876, was vested the title to lot No. 646, in Cherry Grove township, Warren county, Pennsylvania, containing about one hundred and sixty-five acres of land. On May 8, 1876, Bartle conveyed the same tract to Charles Martin and Christian C. Larsen, by deed of general warranty containing the following reservation : "Expressly reserving from this conveyance for the party of the first part, his heirs and assigns, the one-eighth part of all the minerals or oil product produced on or from said piece of land, to be divided between them on the land."

Subsequently, the interest of the Larsens in and to ninety-three acres of the tract became vested in the Union Oil Company by deed, and the remainder, less fifteen acres conveyed by Larsens to Nelson, having become vested in Moerck and Falconer, who leased it to the Union Oil Company.

The Union Oil Company has been in possession since May, 1882, and has extracted large quantities of petroleum and expended large sums of money in the erection of derricks, machinery, &c. In May, 1882, it received written notice from the complainants of their claim to the one eighth of all the oil produced, and a demand for its delivery. The total amount produced from the commencement of production to July 3, 1882, was 65,537.84 barrels. This oil the Union Oil Company sold. The total amount produced from August 1, 1882, to September 30, 1882, the date of the entry of the action, was 118,105.84 barrels. One eighth of this latter amount was run into

the united pipe lines and stands to the credit of the Union Oil Company, and is designated as "disputed royalty."

In the case stated, the parties left it to the Court to determine "what proportion of said oil and its products the plaintiffs, and each of them, are entitled to, and for what proportion of the expense and development of production, if any, the defendants are entitled to be credited as against the plaintiffs and each of them," and to appoint "a master to state an account against the defendants in accordance with the principle of such decree."

MARCH 27, 1883.—The Court filed the following opinion (after stating the facts): "As between the plaintiffs and the Union Oil Company, defendant, the only question for determination is: Do the words quoted operate as an exception, leaving in the grantor the one eighth of the oil in place? If so, the plaintiffs and the company are tenants in common of the oil, and as incident to such tenancy the company must be allowed for the one eighth of its reasonable expenditures for the common benefit. But I am of the opinion that the words used do not indicate an intention that the grantor should retain an estate in the oil in place. Such intention would have been clearly expressed by ending the clause with the word 'oil' and the added words, 'products produced on or from said piece of land, to be divided between them on the land,' would be meaningless. I think it reasonable to conclude that the parties made use of these added words for some purpose, and although that purpose may not be clearly expressed, the impression on my mind is that they were used to designate a right in the grantor to the one eighth of the oil when, and only when, the grantees, their heirs and assigns, should, at their own expense and at their own pleasure, raise the same to the surface. After the delivery of the deed, the grantor had no right, and the grantees were under no obligation, to operate the land for the purpose of producing oil. The rights of the grantor were contingent upon production by the grantees. If produced by the grantees, then the right of the grantor attaches to the one eighth of the 'product produced,' without any accountability for the costs of production."

The Court decreed that the Union Oil Company account, "without any deduction on account of development and production," and appointed Charles Dinsmore master to state the account in accordance therewith.

[Appeal of the Union Oil Co., Moerck and Falconer's Appeal, &c.]

The master found, as matter of law:

"*First.* That the sale of plaintiffs' share of the oil from time to time, down to and including the 31st of July, 1882, by the Union Oil Company, was a conversion of such oil from the dates of the several sales; that this conversion was not made under circumstances of outrage that would entitle plaintiffs to exemplary or punitory damages.

*Second.* That the measure of damages for such conversion is the actual market value of the oil at the dates of such conversion, to which interest should be added from such dates to the time of entering the decree in this case.

*Third.* That the same rules, in fact, apply to plaintiffs' share of the oil produced in August and September, 1882. Plaintiff having demanded the oil, and the same having been refused, such demand and refusal amount to a conversion in law, and plaintiffs must be understood, in bringing their action, to be seeking the recovery of that only for which they may recover damages for such unlawful detention or conversion."

He stated an account in favor of complainants against the Union Oil Company in $14,764 75.

Exceptions were filed to the master's report, both by plaintiffs' and by defendant's company, which the Court, April 14, 1883, dismissed.

It decreed "that the Union Oil Company, defendant, pay to the plaintiffs $14,764 75 and costs of this suit, and it it is further ordered and decreed that the said Union Oil Company deliver to the said plaintiffs the one eighth of the oil produced on the premises described, *supra*, from and after September 30, 1882."

The plaintiffs thereupon took one of above appeals, assigning for error, *inter alia*, the action of the Court in not decreeing that the defendant deliver to plaintiffs the oil in controversy, in not decreeing that the defendants pay to plaintiffs the highest market price of oil between the dates of production and that of filing the bill, and in not charging defendant with the market price of oil at the time of filing the bill.

The defendant company also appealed, assigning for error, *inter alia*, the decree of the Court that defendant company account to the plaintiff for the one-eighth part of all the oil produced from the land described in the statement of facts, without any deduction on account of the development or production.

*Thomas Roddy, William R. Bole, H. L. Richmond, junior,* and *R. Brown* for William R. Bole *et al.*

The prayer of the bill is for the delivery of the oil itself. The decree must conform to the prayer of the bill; the account to the decree: Horton's Appeal, 13 Penna., 67. The decree entered by the learned judge is clear and specific; it is for one eighth of the oil, clear, and the duty devolved upon the master was simply to find the quantity of oil produced from the date of the opening of the territory until the time of filing of the bill or entry of the decree. If it should be assumed that the master could go beyond the question of finding and stating the amount of oil produced to a given period, and state the monetary or market value thereof, these appellants claim, in such event, that the highest market price reached between the time of production and the filing of the bill should be taken.

Oil, as .at present bought and sold, is analogous to and partakes of the nature of stocks and bonds, its sale being transacted by certificates from pipe lines. The true measure of damages for this case is to be found in Neiler *v.* Kelly, 19 Smith, 403; and in Work *v.* Bennett, 20 *Id.*, 484; Funk *v.* Haldeman, 53 Penna., 229. See also Johnstown Iron Co. *v.* Cambria Iron Co., 8 Casey, 241; Carnahan *v.* Brown, 60 Pa., 23; Union Petroleum Co. *v.* Bliven Petroleum Co., 72 Penna., 173.

In reply to the cases cited in support of the construction claimed by the other side, it is enough to say that in every case the deed expressly reserved to the grantors not only the ore but the right to enter and mine the same. The right of plaintiffs here is incorporeal and contingent on the production. There was no obligation on the vendees of Bartle to produce the oil, but when they did, then *eo instanti* the right attached : Clement *v.* Youngman, 4 Wr., 346.

*John G. Hall, J. B. Brawley,* and *Johnson, Lindsey & Parmalee* for the Union Oil Company.

The Union Oil Company and the representatives of the Bartle and Pattison one eighth interest are tenants in common, and being tenants in common, the Oil Company is bound only to account for one eighth of the profits. A credit should therefore have been allowed us in the account stated by the master for one eighth of the cost of production. The language of the clause in the deed, upon which the plaintiffs below rest their claim, [see *supra*] operates as an exception, by virtue of which the title to one eighth of the oil was retained in the grantor, his heirs and assigns.

The word "produced" in the clause in question has only the force of "found" and in this view the exception is analogous in its language to that construed in Baker *v.* McDowell, 3 W. & S., 358, and in Shoenberger *v.* Lyon, 7 W. & S., 184, in each of which cases the language used was held to be an exception. On the question of construction, see Whitaker *v.* Brown, 10 Wr., 197; 3d Washburn on Real Property, chapter 5, section 4, pl., 57; Caldwell *v.* Fulton, 7 Casey, 475. That we are liable to account only for the profits upon construction is correct, is shown by 4 Kents' Commentaries, 369; Gregg *v.* Patterson, 9 W. & S., 198; Coleman's Appeal, 12 Smith, 278. The price for which we must account is the price we have received for the oil : Greenwood's Appeal, 11 Norris, 181.

OCTOBER 1, 1883.—PER CURIAM : These three appeals are from the same decree, and were argued together. We think the learned judge correctly held that the language of the reservation designated a right in the grantor to the one eighth of the oil raised to the surface by the grantees, their heirs and assigns, at their expense and pleasure. Then and not till then was the "product produced." The grantor was entitled to his share without any deduction for expenses in producing it. We discover nothing in the whole case to sustain any of the numerous specifications of error. The measure of damages and the time for their ascertainment were correctly stated. The rule applicable to stocks on a failure to deliver should not be applied to a chattel like oil. Damages for the non-delivery of oil under the facts shown were correctly measured by the ordinary rule applicable to chattels generally.

In view of the whole case we think no one of the appellants has just cause to complain of the decree.

Decrees affirmed, and the several appeals dismissed at the costs of the respective appellants therein.